IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE,      :
                             :
        Plaintiff            :      CIVIL NO. 1:15-CV-00714
                             :
    vs.                      :
                             :
TERRY O'BRIEN, et al.,       :      (Judge Rambo)
                             :
                             :
        Defendants           :

## MEMORANDUM AND ORDER

## Background

Plaintiff Kareem Hassan Milhouse, an inmate currently incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg), filed this Bivens-styled action on April 13, 2015. Milhouse also filed a motion to proceed in forma pauperis. (Doc. 6)

Milhouse names as Defendants the following 8 individuals employed by the federal government: (1) Terry O'Brien, Warden at the United States Penitentiary at Hazleton ("USP-Hazleton), located in Bruceton, Mills, West Virginia; (2) Robert Brinson, Unit Manager at USP-Hazleton; (3) M. Boyd, Case Manager at USP-Hazleton; (4) David Ebbert, Warden at USP-Lewisburg; (5) Rocco Angelo,

Case Manager at USP-Hazelton; (6) Thomas McGhee, Disciplinary Hearing Officer, Mid-Atlantic Region of the Federal Bureau of Prisons ("FBOP"); (7) C. Eichenlaub, Region Director for the Mid-Atlantic Region of the FBOP; and (8) Harrell Watts, Administrative Remedy Coordinator for the Central Office of the FBOP. (Doc. 1) Milhouse also identifies as defendants several "John Does." Id.

Milhouse claims that he was designated to a Special Management Unit ("SMU"), a control unit, in violation of his rights under the United States Constitution and federal regulations. Id. Milhouse contends that Warden O'Brien violated 28 C.F.R. § 541.41 when he referred Milhouse for placement in the SMU. Id. Section 541.41(c)(1) provides that a warden may not refer an inmate for placement in a control unit "if the inmate shows evidence of significant mental disorder or major physical disabilities as documented in a mental health evaluation or a physical examination." Milhouse asserts that he has a depressive disorder and is taking multiple psychotropic medications. Id. He also contends that he attempted suicide by ingesting 25 Elavil pills, an antidepressant medication, and was hospitalized from

February 28, 2014 to March 3, 2014. Id. He alleges he was placed on suicide watch from March 3, 2014 through March 15, 2014. Id.

Milhouse further alleges that he was not accorded the hearing procedures relating to SMU placement set forth in 28 C.F.R. § 541.43. Id. Milhouse states Warden O'Brien, Defendant Angelo and Defendant McGhee denied him a staff representative and the right to call witnesses and present documentary evidence at the SMU hearing. Id.  He further contends that Defendants Brinson and Boyd presented false information relating to the SMU referral. Id.  With respect to Defendant Ebbert, Milhouse claims that Ebbert is aware of Milhouse's mental illness but has refused to transfer him to a less restrictive facility. Id.  Milhouse claims that Ebbert "forc[es] prisoners to have cellmates or places them in restraints for refusing them." Id. Moreover, Milhouse claims his life is in danger in the SMU and that danger is "enhanced by having a cellmate." Milhouse contends that Defendants Eichenlaub and Watts were aware of his mental health issues and that he was

3

denied his due process rights at the SMU hearing.

Finally, he claims "John Does 1-5" were aware of the due

process violations at the SMU hearing.  As relief,

Milhouse requests the issuance of a preliminary and

permanent injunction involving, inter alia, release from

the SMU, and compensatory and punitive damages.[1]

A memorandum from Defendant O'Brien to Defendant

Eichenlaub dated February 18, 2014, which Milhouse

attached to his complaint, states in part as follows:

> Inmate Milhouse is classified as a HIGH
> security level inmate with MAX custody.
> Milhouse has a projected release date of
> September 28, 2080.  Milhouse has most
> recently received incident reports for Code 104,
> Possessing a Dangerous Weapon, Code 113
> Possessing Drugs/Alcohol (2 counts), Code 201,
> Fighting with Another Person, Code 203,
> Threatening Bodily Harm (3 counts), Code 222,
> Possessing Intoxicants, Code 299, Disruptive
> Conduct-High.  Based on Milhouse's history
> of disruptive behavior, the Unit Team is
> recommending inmate Milhouse receive a Code
> 324, Program Participation transfer, to any
> appropriate Special Management Unit. Milhouse
> will remain in the SHU pending the disposition
> of this request.

---

1.  In the prayer for relief, Milhouse also claims that
he was "the victim of multiple assaults while [housed]
in SMU" but neither the body of the complaint nor the
prayer for relief gives any details.

　　　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

　　　　Milhouse is pending Incident Reports for
　　　　Code 205, Engaging in Sexual Acts (2 counts)
　　　　and Code 300, Indecent Exposure.

　　　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

　　　　Inmate Milhouse arrived at the United States
　　　　Penitentiary (USP) Hazelton on August 28, 2013,
　　　　as a 325 SMU completion transfer from USP
　　　　Allenwood. Milhouse has demonstrated poor
　　　　institutional adjustment at this facility.
　　　　Milhouse has been unable to maintain clear
　　　　conduct and is considered to be a management
　　　　concern.  Milhouse is currently in the Special
　　　　Housing Unit (SHU) awaiting the disposition of
　　　　this request.

(Doc. 1-1, at 2-3) A request by the Warden of USP-

Hazelton to have Milhouse transferred to an SMU, also

attached to Milhouse's complaint, further states in

pertinent part as follows:

　　　　Inmate Milhouse was sentence out of the Eastern
　　　　District of Pennsylvania to a 84-years and
　　　　6-months sentence for Bank Robbery, Aiding and
　　　　Abetting (2 Counts), Hobbs Act, Use of a
　　　　Firearm during a Crime of Violence, Armed
　　　　Bank Robbery, Aggravated Sexual Assault, Sexual
　　　　Abuse, Assault, Escape-Prisoner in Custody of
　　　　Institution or Officer, Possession of Dangerous
　　　　Weapon in A Federal Facility.  Milhouse has a
　　　　[Central Inmate Monitoring] CIM assignment of
　　　　Separation and a minor history of escape.

Id. at 4. Milhouse was ultimately transferred from USP-Hazelton to USP-Lewisburg and is presently incarcerated in the SMU at USP-Lewisburg. (Doc. 6, at 2)

On October 6, 2015, the court provisionally granted Milhouse in forma pauperis status. Furthermore, the Clerk of Court was appointed to effect service.

On October 15, 2015, Milhouse filed a motion for a preliminary injunction and a supporting brief. Milhouse requests "(1) immediate transfer to state correctional institution in Pennsylvania or (2) hold-over facility, (3) placed on x-block first floor until transferred, (4) permanent injunction to be free from [Special Management Unit] placement period; (5) consent decree that Plaintiff constitutional rights were violated." For the reasons set forth below the motion will be denied.[2]

---

2. Under the screening provisions of the Prison Litigation Reform Act it is incumbent upon the court to dismiss claims that lack merit, including claims for preliminary injunctive relief. See 28 U.S.C. § 1915A ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint[.]").

## Discussion

Preliminary injunctive relief is extraordinary in nature, and is discretionary with the trial judge. Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Board of Trustees of Bloomsburg State College, 353 F. Supp. 542 (M.D. Pa. 1973)). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:  (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)); Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 852 (3d Cir.), cert. denied, 479 U.S. 950

7

(1986).  It is the moving party that bears the burden of demonstrating these factors.  See Dorfman v. Moorhous, No. Civ. A. 93-6120, 1993 WL 483166 at *1 (E.D. Pa., Nov. 24, 1993).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.  Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980); see Wright & Miller, Federal Practice and Procedure: Civil Sec. 2948 at 431 (1973).  The Third Circuit Court of Appeals has defined irreparable injury as "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801.  A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm."  Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction

8

is to be issued. SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985).

Clearly, speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)).

It is abundantly clear that Milhouse has not shown that he deserves preliminary injunctive relief according to the pertinent legal standards outlined above. Initially, Milhouse has not made a strong showing that he is likely to prevail on the merits. Furthermore, Milhouse has not alleged facts from which it can be concluded that he will suffer irreparable harm if preliminary injunctive relief is denied. While Milhouse may assert that he is in danger because of the nature of other inmates in the SMU, this type of danger is speculative and not a basis for relief.

9

It is well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983). An inmate does not have a constitutional right to choose his place of confinement, security classification, any particular housing assignment or cellmate. <u>Id.</u>; <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976) <u>Moody v. Daggett</u>, 429 U.S. 78, 88 (1976); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011); <u>Burger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5th Cir. 1995). In <u>Murray</u>, the Third Circuit in addressing whether the Ninth Amendment established "a right to choose one's cellmate" noted that "courts confronted with the question . . . have held that no such right exists." 650 F.3d at 247.

With respect to federal prisoners, the Bureau of Prisons has the power, pursuant to 18 U.S.C. § 3621(b), to "transfer a prisoner from one facility to another at any time." <u>Prows v. Federal Bureau of Prisons</u>, 981 F.2d 466, 469 n.3 (10th Cir. 1992), <u>cert. denied</u>, 510 U.S. 830, 114 S. Ct. 98 (1993); <u>Cardenas v. Wigen</u>, 921 F.

Supp. 286, 291 (E.D. Pa. 1996).  Section 3621(b) authorizes the Bureau "to designate the place of confinement for purposes of serving federal sentences of imprisonment."  Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991).  "If the prisoner can be lawfully held in the facility to which he has been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive or less accessible facility".  Ali v. Gibson, 631 F.2d 1126, 1135 (3d Cir. 1980).  It is clear that decisions regarding Milhouse's designation are within the sound discretion of the BOP.  Since Milhouse does not enjoy a constitutional right to be housed in a particular correctional facility, the denial of his request to be transferred to another prison or have a particular cell assignment does not assert a cognizable claim.

In sum, a prisoner does not have a protected liberty interest in matters of classification or particular custody status, and none is provided by federal law.  Hewitt v. Helms, 459 U.S. 460 (1983);

<u>Montanye</u>, 427 U.S. at 242; <u>Stephany v. Wagner</u>, 835 F.2d 497 (3d Cir. 1987). An inquiry by this Court into matters of prison administration, such as classification or custody status, would necessarily interfere with the administration's right to police its penal system. These administration determinations have consistently and correctly been left to the prison management's sound discretion. <u>McNeil v. Latney</u>, 382 F. Supp. 161, 162 (E.D. Va. 1974); <u>Pope v. Williams</u>, 426 F. Supp. 279 (E.D. Pa. 1971). Thus, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye</u>, 427 U.S. at 242.

**ACCORDINGLY,** this 27th day of October, 2015, **IT**

**IS HEREBY ORDERED THAT** Milhouse's motion for a preliminary injunctions (Doc. 12) is denied.


                    <u>s/Sylvia H. Rambo</u>
               United States District Judge