IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE,  :
                         :
        Plaintiff        :    CIVIL NO. 1:15-CV-00714
                         :
    vs.                  :
                         :
TERRY O'BRIEN, et al.,   :    (Judge Rambo)
                         :
                         :
        Defendants       :

## MEMORANDUM

## Background

Plaintiff Kareem Hassan Milhouse, an inmate currently incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg), filed this Bivens-styled action on April 13, 2015. (Doc. 1.) Milhouse also filed a motion to proceed in forma pauperis. (Doc. 6.)

Milhouse names as Defendants the following eight individuals employed by the federal government: (1) Terry O'Brien, Warden at the United States Penitentiary at Hazleton ("USP-Hazelton), located in Bruceton, Mills, West Virginia; (2) Robert Brinson, former Unit Manager at USP-Hazelton; (3) M. Boyd, Case Manager at USP-

Hazelton; (4) David Ebbert, Warden at USP-Lewisburg; (5)
Rocco Angelo, Case Manager at USP-Hazelton; (6) Thomas
McGee,[1] Disciplinary Hearing Officer, Mid-Atlantic
Region of the Federal Bureau of Prisons ("FBOP"); (7) C.
Eichenlaub, Region Director for the Mid-Atlantic Region
of the FBOP; and (8) Harrell Watts, Administrative
Remedy Coordinator for the Central Office of the FBOP.
(Doc. 1.)

Milhouse claims that he was designated to a
Special Management Unit ("SMU"), a control unit,[2] in
violation of his rights under the United States
Constitution and federal regulations. Id. Milhouse

---

1. Milhouse incorrectly spelled this Defendant's
surname "McGhee."

2. The Special Management Unit is not a "control unit"
because a control unit imposes a super-maximum security
regime, involving, inter alia, placement in solitary
confinement.  The Bureau of Prisons has operated only a
few actual control units, e.g., the Administrative
Maximum facility located at the United States
Penitentiary located at Florence, Colorado ("ADX"). Prior to the
opening of the ADX there was a control unit at the
United States Penitentiary at Marion, Illinois.
Placement in a control unit is governed by Bureau of
Prisons Program Statement 5212.07 while placement in a
Special Management Unit such as exists at USP-Lewisburg
is governed by Program Statement 5217.01. See Milhouse
v. Bledsoe, 2011 WL 332417, at *1-3 (M.D.Pa. Jan. 31,
2011).

contends that Warden O'Brien violated 28 C.F.R. § 541.41 when he referred Milhouse for placement in an SMU. <u>Id.</u> Section 541.41(c)(1) provides that a warden may not refer an inmate for placement in a control unit "if the inmate shows evidence of significant mental disorder or major physical disabilities as documented in a mental health evaluation or a physical examination."[3] Milhouse asserts that he has a depressive disorder and is taking multiple psychotropic medications. <u>Id.</u> He also contends that he attempted suicide by ingesting 25 Elavil pills, an antidepressant medication, and was hospitalized from February 28, 2014 to March 3, 2014. <u>Id.</u> He alleges he was placed on suicide watch from March 3, 2014 through March 15, 2014. <u>Id.</u>

Milhouse further alleges that he was not accorded the hearing procedures relating to SMU placement set forth in 28 C.F.R. § 541.43.[4] <u>Id.</u>

---

3. One reason for the adoption of this provision was the potential psychological impact of solitary confinement. Furthermore, 28 C.F.R., Part 541, Subpart D, of which this section is a part, deals with the Control Unit Program, not the Special Management Units.

4. As stated, the procedures set forth in BOP Program

(continued...)

Milhouse states Warden O'Brien, Defendant Angelo and Defendant McGee denied him a staff representative and the right to call witnesses and present documentary evidence at the SMU hearing. Id.  He further contends that Defendants Brinson and Boyd presented false information relating to the SMU referral. Id.  With respect to Defendant Ebbert, Milhouse claims that Ebbert is aware of Milhouse's mental illness but has refused to transfer him to a less restrictive facility. Id. Milhouse claims that Ebbert "forc[es] prisoners to have cellmates or places them in restraints for refusing them." Id.  Moreover, Milhouse claims his life is in danger in the SMU and that danger is "enhanced by having a cellmate."  Milhouse contends that Defendants Eichenlaub and Watts were aware of his mental health issues and that he was denied his due process rights at the SMU hearing.  As relief, Milhouse requests the issuance of a preliminary and permanent injunction

---

4.  (...continued)
Statement 5217.01 are applicable to SMUs. The hearing procedures relating to placement in a control unit found in § 541.43 do not apply.

involving, inter alia, release from the SMU, and compensatory and punitive damages.[5]

A memorandum from Defendant O'Brien to Defendant Eichenlaub dated February 18, 2014, which Milhouse attached to his complaint, states in part as follows:

> Inmate Milhouse is classified as a HIGH security level inmate with MAX custody. Milhouse has a projected release date of September 28, 2080.  Milhouse has most recently received incident reports for Code 104, Possessing a Dangerous Weapon, Code 113 Possessing Drugs/Alcohol (2 counts), Code 201, Fighting with Another Person, Code 203, Threatening Bodily Harm (3 counts), Code 222, Possessing Intoxicants, Code 299, Disruptive Conduct-High.  Based on Milhouse's history of disruptive behavior, the Unit Team is recommending inmate Milhouse receive a Code 324, Program Participation transfer, to any appropriate Special Management Unit. Milhouse will remain in the SHU pending the disposition of this request.
>
> *    *    *    *    *    *    *    *    *    *    *
>
> Milhouse is pending Incident Reports for Code 205, Engaging in Sexual Acts (2 counts) and Code 300, Indecent Exposure.
>
> *    *    *    *    *    *    *    *    *    *    *
>
> Inmate Milhouse arrived at the United States

---

5.  In the prayer for relief, Milhouse also claims that he was "the victim of multiple assaults while [housed] in SMU" but neither the body of the complaint nor the prayer for relief gives any details.

Penitentiary (USP) Hazelton on August 28, 2013, as a 325 SMU completion transfer from USP Allenwood. Milhouse has demonstrated poor institutional adjustment at this facility. Milhouse has been unable to maintain clear conduct and is considered to be a management concern.  Milhouse is currently in the Special Housing Unit (SHU) awaiting the disposition of this request.

(Doc. 1-1, at 2-3.) A request by the Warden of USP-Hazelton to have Milhouse transferred to a SMU which was prepared by Case Manager Boyd and Unit Manager Brinson, also attached to Milhouse's complaint, further states in pertinent part as follows:

1.  Inmate's Medical Status

Inmate Milhouse is assigned to regular duty status with no medical restrictions. He is assigned Care Level 2 and there is no medical information that would preclude this inmate from transfer.

*    *    *    *    *    *    *    *    *    *    *

5.  Note any past or present behavior and/or management/inmate concerns.

Inmate Milhouse was sentence out of the Eastern District of Pennsylvania to a 84-years and 6-months sentence for Bank Robbery, Aiding and Abetting (2 Counts), Hobbs Act, Use of a Firearm during a Crime of Violence, Armed Bank Robbery, Aggravated Sexual Assault, Sexual Abuse, Assault, Escape-Prisoner in Custody of Institution or Officer, Possession of Dangerous Weapon in A Federal Facility.  Milhouse has a

6

[Central Inmate Monitoring] assignment of
Separation and a minor history of escape.

Id. at 4. Milhouse was ultimately transferred from USP-
Hazelton to USP-Lewisburg and is presently incarcerated
in the SMU at USP-Lewisburg. (Doc. 6, at 2.)

On October 6, 2015, the court provisionally
granted Milhouse in forma pauperis status.[6] Furthermore,
the Clerk of Court was appointed to effect service.[7]

Pending before the court is a motion to dismiss
and/or for summary judgment filed by Defendants on
February 1, 2016. (Doc. 29.)  Defendants filed a brief
in support, statement of material facts and evidentiary
materials on February 16, 2016. (Docs. 34, 35.)
Defendants argue (1) the motion should be granted with
respect to Defendants O'Brien, Brinson, Boyd, McGee,

---

6.  Milhouse was provisionally granted in forma pauperis
status because there was a lack of clarity as to
whether or not he had three strikes under the Prison
Litigation Reform Act. The Court of Appeals
subsequently ruled in a separate case that Milhouse
only had one strike at the time this action was filed.
After this case was filed Milhouse accumulated two
additional strikes.

7.  The record reveals that the United States Marshal
ultimately effectuated service on the Defendants.

Watts and Eichenlaub because the court lacks personal jurisdiction over them; (2) the motion should be granted as to Defendant Angelo because he had no personal involvement sufficient to impose liability; and (3) the motion should be granted as to Defendant Ebbert because he cannot be held liable on the basis of respondeat superior and because he had no involvement in the process which resulted in Milhouse's designation to the SMU and such designation was proper.

In opposition Milhouse filed several documents. On February 25, 2016, Milhouse filed a document consisting of two pages which was docketed by the Clerk as a brief in opposition. (Docs. 39, 39-1.) The first page was entitled "Motion Opposing Defendants (sic) Motion for Summary Judgment" and merely states "Plaintiff respectfully request (sic) said motion is granted."  (Doc. 39, at 1.) The second page was entitled "Brief In Support of Motion Opposing Defendants (sic) Motion for Summary Judgment" and states in toto as follows:

1. Argument

> According to Local Rules in Middle District of Pennsylvania Defendant had 14 days to file a Brief in Support of Motion for Summary Judgment which was filed February 1, 2016, and they failed to do so. As so their motion shall be deemed withdrawn, and default judgment entered.

(Doc. 39-1, at 1.)  Also, on February 25, 2016, Milhouse filed (1) what purports to be a statement of material facts (consisting of 10 numbered paragraph without reference to any evidentiary materials)(Doc. 40);[8] (2) a document entitled "Request for Admissions" (Doc. 41, at

---

8. The statement indicates that Milhouse was allegedly taken to the Special Housing Unit at the United State Penitentiary at Hazelton, located in West Virginia ("USP-Hazelton") on December 14, 2013 (because alcohol was found in his cell), and placed in a cell with another inmate; on January 6, 2014, he was told that he did not receive any disciplinary segregation; on January 22, 2014, his cellmate was released from the Special Housing Unit; on February 27, 2014, he attempted suicide by ingesting 25 Elavil pills; he was hospitalized at a local hospital from February 27 through March 3, 2014; after being returned to USP-Hazelton he was placed on suicide watch from March 3, through March 16, 2014; before the Special Management Unit referral hearing he received documentation from the Warden of USP-Hazelton that he had been approved for such referral; he was designated to the Special Management Unit on March 6, 2014; he was designated to the Special Management Unit even though violent inmates with assault and weapons charges were released from the Special Management Unit; and he was denied a staff representative and an opportunity to obtain documentary evidence for the SMU referral hearing and the hearing officer was biased and partial.

1) consisting of five paragraphs[9] and a document entitled "Motion for Summary Judgment" which merely states "Plaintiff respectfully request Motion is granted" (Doc. 41, at 2); and (3) a document entitled "Brief in Support of Motion for Summary Judgment" consisting of 2 pages which reiterates what he stated in the other documents and in his complaint. (Doc. 42, at 1-2.)

On February 26, 2016, Milhouse filed a document entitled "Motion for Leave to Supplement Motion in Opposition to Defendants (sic) Motion for Summary Judgment." (Doc. 43.)  In the document Milhouse claimed "he had no law library time," he only received Defendants filings on February 19, 2016, and he needed

---

9. The five paragraphs indicate that Defendants were aware that Milhouse had mental illness and attempted suicide; the SMU referral was a sham and the hearing officer was biased and partial; that documentation was prepared in advance of the hearing approving him for SMU placement; he was denied an opportunity to compile documentary evidence and have a staff psychologist present at the hearing; and Defendants falsified documentation. There is no indication these so-called requests for admission were served on Defendant in accordance with the Local Rules of Court. See M.D.Pa. Local Rule 5.4(a),(b).

to supplement his response. (<u>Id.</u> at 1.)  Along with the motion Milhouse filed what appeared to be his supplemental response and a counter-statement of material facts consisting of 60 paragraph but which did not respond in sequence to the numbered paragraphs in Defendants' statement of material facts. (Docs. 44, 45.)

In anticipation of the court granting Milhouse's so-called motion to supplement (Doc. 43), the Defendants on March 21, 2016, filed a motion for extension of time (Doc. 47) to file a reply to Plaintiff's brief in opposition.  Because Milhouse's so-called counter-statement of material facts was not in conformity with Local Rule 56.1 by order of March 28, 2016, the court granted his motion to supplement and, likewise, granted Defendants' motion for an extension of time to file a reply brief.

Paragraph 2 of the dispositive portion of the order of March 28, 2016, authorized Milhouse to file a brief within thirty (30) days, i.e., April 27, 2016, which superseded all prior briefs and other documents

11

filed by Milhouse.  The order provided that the brief
should be in conformity with Local Rules 5.1 and 7.8.
Along with the brief Milhouse was directed to file a
statement of material facts in accordance with Local
Rule 56.1. The statement was to respond sequentially to
the numbered paragraphs set forth in the Defendants'
statement of material facts.  Milhouse was directed to
either admit or deny each paragraph and, if he denied a
paragraph, he was to specify why he was denying the
paragraph and refer to evidentiary materials supporting
his denials.  Furthermore, Milhouse was advised that
failure to so deny a paragraph would result in the
paragraph being deemed admitted.  Milhouse was also
advised that he could file evidentiary material (e.g.,
affidavits) in support of his statement of material
facts. Finally Milhouse was advised that any further
filings by him in response to Defendants' dispositive

motion, other than as permitted by paragraph 2, would be stricken from the record.[10]

---

10.  Local Rule 56.1 states in toto as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing paragraph; as to which it is contended that there exists a genuine issue to be tried.
>
> Statement of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. LR 56.1.  A standard practice order was issued on April 14, 2015, which advised Milhouse of the requirements of several Local Rules of Court, including Local Rule 56.1. (Doc. 3.)

On April 14, 2016, Milhouse filed a 3-page document entitled "Amended Brief in Support of Opposal (sic) to Defendants (sic) Motion to Dismiss or in alternative for Summary Judgement." (sic) (Doc. 53.) Attached to the document were two exhibits. Id.  Also on April 14, 2016, Milhouse filed a document entitled "Counter Statement of Material Facts" (Doc. 54) which partially responds to the Defendants' statement of material facts.

On April 18, 2016, Milhouse filed a document entitled "Motion to Add Attached Exhibits to Plaintiff's Reply to Defendants' Motion to Dismiss or for Summary Judgment." (Doc. 55.)  Although Milhouse failed to indicate how the exhibits attached to the motion were relevant or relate to his response to Defendants' statement of material facts, the court on April 22, 2016, issued an order stating that the court would consider them when addressing Defendants' motion to

dismiss and/or for summary judgment.[11]  The court also
stated that paragraphs 2 and 4 of the order of March 28,
2016, remained in full force and effect. Paragraph 4
provided that the Defendants could file a reply brief
within 60 days, i.e., May 31, 2016.  The matter became
ripe on May 31, 2016, when Defendants filed a reply
brief.  For the reasons set forth below, Defendants'
motion to dismiss and/or for summary judgment will be
granted.

**Motion to Dismiss**

Defendants' motion to dismiss is brought
pursuant to both Federal Rule of Civil Procedure
12(b)(2) and 12(b)(6). With respect to the Rule 12(b)(2)
motion several of the Defendants argue that this court
lacks personal jurisdiction over them.  The remaining
Defendants also argue that under Rule 12(b)(6) the

---

11.  The attached documents relate to an incident in
February, 2014, when Milhouse consumed "23 or 24"
Elavil and an incident in March, 2014, when Milhouse
allegedly attempted to hang himself apparently with a
piece of fabric from a mattress tied around his neck
and then tied to his bunk.

complaint fails to state a claim upon which relief can be granted or that summary judgment should be entered in their favor.

Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.2009) (quoting <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Id</u>. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

16

possibility that a defendant has acted unlawfully."
Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1949, 173
L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556,
127 S.Ct. at 1965.) "[L]abels and conclusions" are not
enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65,
and a court "'is not bound to accept as true a legal
conclusion couched as a factual allegation.'" Id., 127
S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus
"conduct a two-part analysis." Fowler, supra, 578 F.3d
at 210. First, we separate the factual elements from the
legal elements and disregard the legal conclusions. Id.
at 210-11.  Second, we "determine whether the facts
alleged in the complaint are sufficient to show that the
plaintiff has a "'plausible claim for relief.'" Id. at
211 (quoted case omitted).

"Because federal courts are courts of limited
jurisdiction, a presumption arises that they are without
jurisdiction until the contrary affirmatively appears."
Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir.

17

1982). In ruling on a motion to dismiss under Rule 12(b)(2), the court is required, as with Rule 12(b)(6) motions, to accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). However, the scope of the Court's review on a Rule 12(b)(2) motion is not limited to the face of the complaint, but may include affidavits and other competent evidence submitted by the parties. Patterson v. FBI, 893 F.2d 595, 603-604 (3d Cir. 1990). The plaintiff, ultimately, bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

## Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

18

a matter of law." Fed.R.Civ.P. 56(a).  "[T]his standard
provides that the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the
requirement is that there be no genuine issue of
material fact."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its
existence or nonexistence would affect the outcome of
the case under applicable substantive law.  Anderson,
477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d
1070, 1078 (3d Cir. 1992).  An issue of material fact is
"genuine" if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party.
Anderson, 477 U.S. at 257; Brenner v. Local 514, United
Brotherhood of Carpenters and Joiners of America, 927
F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine
issue of material fact, the court must view the facts
and all reasonable inferences in favor of the nonmoving

19

party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993);
<u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599,
600 (3d Cir. 1992); <u>White v. Westinghouse Electric</u>
<u>Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to
avoid summary judgment, however, the nonmoving party may
not rest on the unsubstantiated allegations of his or
her pleadings.  When the party seeking summary judgment
satisfies its burden under Rule 56 of identifying
evidence which demonstrates the absence of a genuine
issue of material fact, the nonmoving party is required
by Rule 56 to go beyond the pleadings with affidavits,
depositions, answers to interrogatories or the like in
order to demonstrate specific material facts which give
rise to a genuine issue.  <u>Celotex Corporation v.</u>
<u>Catrett</u>, 477 U.S. 317, 324 (1986).  The party opposing
the motion "must do more than simply show that there is
some metaphysical doubt as to the material facts."
<u>Matsushita Electric Industrial Co. v. Zenith Radio</u>, 475
U.S. 574, 586 (1986).  When Rule 56 shifts the burden of
production to the nonmoving party, that party must

produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**Discussion**

Before addressing the Defendants' arguments the court will set forth the relevant procedures found in Program Statement 5217.01 which were used to designate Milhouse to a SMU. (Doc. 35-1, at 32, Bureau of Prisons Psychology Services SMU Review.)  Program Statement 5217.01 provides in pertinent part:

> Designation to a SMU may be considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public, because the inmate meets any of the following criteria:
>
> ■   Participated in disruptive geographical group/gang related activity.

- Had a leadership role in disruptive geographical group/gang-related activity.

- Has a history of serious and/or disruptive disciplinary infractions.

- Committed any 100-level prohibited act, according to 28 CFR part 541, after being classified as a member of a Disruptive Group pursuant to 28 CFR part 524.

- Participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation of a correctional facility.

- Otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public.

The statement also provides, in pertinent part:

a. **Referral.**  If an inmate appears to satisfy any of the referral criteria above, the Unit Team may present a designation referral to the Warden. The referral packet consists of a completed Request for Transfer/Application of Management Variable (EMS-A409), copies of pertinent Special Investigative Supervisor reports and incident reports, and a cover memorandum to the Warden summarizing the rationale for referral for SMU designation. If

the Warden approves the referral, it is
submitted to the Regional Director. The packet
may be submitted electronically at all stages.
The Unit Team will be notified if the Warden
denies the referral.

b. **Hearing.** If the Regional Director determines
that sufficient evidence exists to convene a
hearing, the Regional Director appoints a
Hearing Administrator to conduct a hearing into
whether the inmate meets the criteria for SMU
designation. The Hearing Administrator will have
been trained and certified as a Discipline
Hearing Officer, will be an impartial decision-
maker, and will not have been personally
involved as a witness or victim in any relevant
disciplinary action involving that inmate.

The Warden will be notified by the Regional
Director's decision to conduct a hearing before
the inmate is provided pre-hearing notice.  The
inmate's security needs will be assessed and
staff made aware of any additional security
precautions.


(1) **Pre-Hearing Notice.** The Hearing
Administrator completes the form BP-A0935,
*Notice to Inmate: Hearing Referral for
Designation to a Special Management Unit* . . .
and sends it to the  inmate's current
institution. Unit team staff provide the inmate
with a copy of the Notice at least 24 hours
before the hearing, and document delivery to the
inmate.

            *    *    *    *    *    *    *    *

The Notice will:

23

- ■  Advise the inmate of the date and time of the hearing.

- ■  Advise the inmate of the opportunity to appear at the hearing.

- ■  Provide a sufficient detailed explanation of the reasons for the referral. Such explanation will not include information that would jeopardize the safety, security, or orderly operation of correctional facilities, or protection of the public.

- ■  Inform the inmate that a non-probationary staff member will be available to help the inmate compile documentary evidence and written witness statements to present at the hearing. The assisting staff member's responsibility in this role is limited to assisting the inmate in obtaining copies of documents needed, for example, from his central file or other reasonably available source(s), or a written statement(s) from other reasonably available inmates or staff.

(2) **Inmate Appearance and Evidence.** The inmate has the opportunity to appear at the hearing, make an oral statement, and present documentary evidence and written witness statements, except where contrary to the safety, security, or orderly operation of Bureau facilities, or protection of the public. The Hearing Administrator, after consultation with the facility where the inmate is housed, will determine whether the inmate appears at the hearing via videoconference, telephone, or in-person.  The Warden or designee will determine

the location of the hearing.  The inmate may not
call witness at the hearing.

c. **Post-Hearing Findings and Decision.** The
Hearing Administrator considers whether, based
on information obtained during the referral
process and presented at the hearing, the inmate
meets the criteria for the SMU program. The
Hearing Administrator prepares the form BP-
A0936, *Hearing Administrator's Report on
Referral for Designation to a Special Management
Unit* (available on Sallyport) and provides it to
the Regional Director. The Report provides a
detailed explanation of the reasons for the
Hearing Administrator's findings, but does not
include information that would jeopardize the
safety, security, or orderly operation of
correctional facilities, or protection of the
public.  The Regional Director considers
whether, based on the Hearing Administrator's
findings, the SMU referral is necessary to
ensure the safety, security, or orderly
operation of Bureau facilities, or protection
of the public. The Regional Director includes a
recommendation on the Report and forwards it to
the Designation and Sentence Computation Center
(DSCC).

Program Statement 5217.01, Special Management Units,

November 19, 2008, https://www.bop.gov/policy/

progstat/5217_001.pdf (Last accessed May 27, 2016).

## A.   Personal Jurisdiction.

The court will now address the issue of whether

this court has personal jurisdiction over Defendants

O'Brien, Brinson, Boyd, McGee, Watts and Eichenlaub.
The Defendants' statement of material facts reveals that
Defendants O'Brien, Brinson, Boyd, McGee, Watts and
Eichenlaub, at the time of the incidents alleged in
Milhouse's complaint, did not reside, work or have
business dealings in Pennsylvania.  They also presently
do not reside, work or have business dealings in
Pennsylvania.  The assertions relating to having
insufficient contact with Pennsylvania are supported by
unsworn declarations under penalty of perjury from each
of these defendants.

When a defendant properly raises a
jurisdictional defense, a plaintiff is required to
"demonstrate sufficient contacts with the forum state to
establish in personam jurisdiction."  North Penn Gas v.
Corning Natural Gas, 897 F.2d 687, 689 (3d Cir. 1990).

A court's personal jurisdiction over a defendant
may be general or specific.  Specific jurisdiction is
found when a "non-resident defendant has 'purposefully
directed' his activities at a resident of the forum and

the injury arises from or is related to those activities." <u>General Electric Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001).  General jurisdiction is present when a defendant has "continuous and systematic contacts with the forum state." <u>Id.</u> at 150.

Specific jurisdiction is inapplicable in this case because the allegation at issue directed at O'Brien, Brinson, Boyd, McGee, Watts and Eichenlaub all relate to their alleged conduct outside of the state of Pennsylvania and that conduct was not directed at Milhouse as a resident of Pennsylvania.  The only question is whether the court can exercise general jurisdiction over them.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes personal jurisdiction over non-residents to the extent permissible under the laws of the state where the district court sits.  <u>Penzoil Products Co. v. Coletti & Associates, Inc.</u>, 149 F.3d 197, 200 (3d Cir. 1998).  The Pennsylvania long-arm statute states in relevant part:

> [T]he jurisdiction of the tribunal of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.C.S.A. § 5322(b).  Consequently, the exercise of personal jurisdiction over a non-resident is proper so long as there is no violation of the due process clause of Fourteenth Amendment to the United States Constitution.  Penzoil Products Co., supra.

The due process requirements are satisfied when a non-resident has "minimum contacts" with the jurisdiction.  See International Shoe Co. v. Washington, 326 U.S. 310 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). The focus of the court's inquiry must be on the activities of the defendant in the forum state.  Burger King Corp., 471 U.S. at 474-76.  The defendant must have purposefully availed itself of the privilege of conducting business in the forum. Id. The Supreme Court in Burger King held that            .

this "purposeful availment" requirement ensures

> that a defendant will not be haled into a
> jurisdiction solely as a result of "random,"
> "fortuitous," or "attenuated" contacts, or of
> the "unilateral activity of another party or a
> third person." Jurisdiction is proper, however,
> where the contacts proximately result from
> actions by the defendant himself that create a
> "substantial connection" with the forum State.
> Thus, where the defendant "deliberately" has
> engaged in significant activities within a
> State, or has created "continuing obligations"
> between himself and residents of the forum, he
> manifestly has availed himself of the privilege
> of conducting business there, and because his
> activities are shielded by "the benefit and
> protections" of the forum's laws it is
> presumptively not unreasonable to require him to
> submit to the burdens of litigation in that
> forum as well.

Id. at 475-76 (internal citations omitted). The

important issue is whether the defendant's conduct with

and connection to the particular jurisdiction is such

that the defendant would reasonably anticipate being

haled into court in the jurisdiction.

In the present case as stated above, Defendants

O'Brien, Brinson, Boyd, McGee, Watts and Eichenlaub have

filed affidavits indicating that they have

insignificant or no contact with the Commonwealth of

Pennsylvania. In responding to the statement of material

facts, Milhouse did not (1) claim that any of those defendants worked or resided in Pennsylvania or (2) submit any contrary evidentiary materials.  Even assuming that these Defendants had input into the decision that Milhouse be approved for a transfer to a SMU that input is insufficient to establish the minimum contacts required under the due process clause. <u>Burger King Corp.</u>, 471 U.S. at 474 ("Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy consideration so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction."); <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1534 (10th Cir. 1996)(same); <u>McMillan v. Wiley</u>, 813 F.Supp.2d 1238, 1246 (D.Colo 2011)(the fact that Defendants had input into Plaintiff's transfer to the control unit in Colorado insufficient contact to exercise personal jurisdiction

over them);[12] <u>Williams v. Ponder</u>, 2009 WL 3152129, at *3
(E.D.Pa. Sept. 30, 2009)("The mere issuance of an arrest
warrant that foreseeably caused [Plaintiff] to be
arrested in Pennsylvania . . . does not provide
sufficient contacts with Pennsylvania for this court to
exercise jurisdiction."). Consequently, Milhouse's
claims against Defendants O'Brien, Brinson, Boyd, McGee,
Watts and Eichenlaub will be dismissed for lack of
personal jurisdiction.

**B. Personal Involvement of Defendant Angelo.**

Defendant Angelo argues the motion to dismiss
and/or for summary judgment should be granted as it
relates to him because he had insufficient personal
involvement with respect to the decision to transfer
Milhouse to a SMU.

With respect to Defendant Angelo, the
Defendants' statement of material facts reveals that at

---

12. The Colorado long-arm statute is similar to that of
Pennsylvania because it confers the maximum
jurisdiction permitted by the due process clause.

all relevant times Defendant Angelo was employed as a
Case Manager at USP-Hazelton. (Doc. 35, ¶ 27.)  Milhouse
did not deny paragraph 27, or the next two paragraphs
which are as follows:

> 28.  In his capacity as a Case Manager,
> [Defendant Angelo] did not conduct
> disciplinary hearings or SMU referral
> hearings. []

> 29.  A review of the Notice of SMU Hearing,
> dated, April 9, 2014, which Milhouse
> received, and SMU Hearing Officer's Report,
> dated April 23, 2014, shows that Defendant
> Angelo was not the staff member who
> prepared and signed the forms indicating
> Milhouse was provided notice of his
> upcoming hearing and his rights at the
> hearing. []

Paragraphs 28 and 29 are supported by Defendant Angelo's
unsworn declaration under penalty of perjury which is
attached to the statement of material facts. (Doc. 35-1,
at 13-15.) Furthermore, the document entitled "Notice to
Inmate: Hearing Referral for Designation to a Special
Management Unit" prepared by Defendant McGee attached to
Defendant Angelo's declaration reveals that Milhouse was
given on April 9, 2014, by C. Bennett, a correctional

counselor, a copy of that document and notice of the SMU referral hearing which was scheduled initially for April 11, 2014. (<u>Id.</u> at 20.)  The notice advised Milhouse that he was being referred for a SMU designation hearing because he had a "history of serious and disruptive disciplinary infractions" and he "otherwise participated in or [was] associated with activity such that greater management of [his] interaction with other persons [was] necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public." (<u>Id.</u> at 16.)  The notice further set forth Milhouse's background and institutional adjustment as follows:

> Milhouse, Kareem #59904-066 is a 37 year old Black Male inmate assigned to USP Hazelton, West Virginia on 08-28-2012 as a SMU Completion Transfer from USP Allenwood Pennsylvania. Milhouse is serving an aggregate sentence of 84 years with an aggregate 5year Term of Supervision for Bank Robbery, Aiding and Abetting; Hobbs Act Robbery, Aiding and Abetting; Use of a Firearm During a Crime of Violence; Armed Bank Robbery; Aggravated Sexual Assault; Sexual Abuse; Assault; Escaped Prisoner in Custody of an Institution or Officer; and Possession of a Dangerous Weapon in a Federal

Facility. Milhouse has Maximum Custody with a
Security Classification Level of High. Milhouse
has no [Security Threat Group] assignment and a
Central Inmate Monitoring Status of Separation.
Milhouse has a Chronological Disciplinary
History that includes the following sanctioned
Prohibited Act Code violations: Code 104,
Possession of a weapon; Code 113, Possession
of alcohol/syringe[X2]; Code 201, Fighting [X2];
Code 203, Threatening bodily harm[X3(S-2, I-1)];
Code 205, Engaging in a sexual act [X8]; Code
208, Interfering with a security device; Code
218, Destroying property valued greater than
$100.00; Code 220, Wrestling; Code 222, Making/
possessing/using alcohol [X2]; Code 299, High
severity disruptive conduct; Code 302, Misuse of
authorized medication; Code 305, Possession of
contraband [X3]; Code 306, Refusing to work/
accept programs [X2]; Code 307, Refusing an
order of staff [X11]; Code 312, Insolence
towards staff [X9]; Code 313, Lying/false
statement [X2]; Code 314, Counterfeiting/forging
a document [X3]; Code 320, Failing to stand for
count [X10]; Code 329, Destroying property
valued less than $100.00 [X4]; and Code 398,
Moderate severity interfering with staff in the
performance of duties.  Milhouse's most recent
relevant pertinent sanctioned prohibited acts of
possessing alcohol, fighting, thrice engaging in
sexual acts, destroying property valued greater
than $100.00, and high severity disruptive
conduct in conjunction with having previously
completed the Special Management Unit Program at
USP Allenwood are the activities which have
prompted staff intervention and his subsequent
referral for an Administrative Hearing to
determine whether his behavior meets the
established criteria for designation to a
Special Management Unit Program within the

Bureau of Prisons.

(Id. at 17.)  The notice also advised Milhouse of his rights at the SMU referral hearing, including the right to appear at the hearing via videoconference, telephone or in person as determined by the Hearing Administrator, the opportunity to make an oral statement and present documentary evidence, and the right to assistance by a staff representative to compile documentary evidence and written witness statements, all in accordance with Program Statement 5217.01.

Paragraph 30 of the Defendants' statement of material facts which Milhouse responded to, but did not specifically deny, states as follows:

> 30.  Defendant Angelo was not involved in the SMU hearing process, either as the Hearing Administrator or as Milhouse's staff Representative.

Milhouse's response to paragraph 30 was set forth in the document entitled "Counter-Statement of Material Facts, and Objections to Defendants Statement of Material Facts" which was not signed under penalty of perjury.

35

(Doc. 45.)  Milhouse contends that Defendant Angelo approached his cell on April 1, 2014, and presented him with a "waiver of notice of hearing" to sign but that he refused and also told Defendant Angelo that he needed a staff representative and witnesses for the referral hearing. (Id. at 4.)  Milhouse further states that the hearing was initially scheduled for April 4, then April 11, 2014, but ultimately continued to and held on April 17, 2014, because he previously did not secure a staff representative or witnesses.  Id.  Milhouse apparently contends that Defendant Angelo each time presented him with the pre-hearing notices.  Id.

Milhouse did not submit any evidentiary materials in support of his response to paragraph 30. In contrast, paragraph 30 is supported by the unsworn declaration under penalty of perjury of Defendant Angelo. (Doc. 35-1, at 13-15.) Furthermore, evidentiary materials submitted by Defendants reveal that Milhouse's staff representative was not Defendant Angelo but correctional counselor Bennett who in fact delivered to

Milhouse the notice of the SMU referral hearing to
Milhouse on April 9, 2014, at 1:22 P.M. (<u>Id.</u> at 20, 22.)
There is no explanation by Milhouse why he involved
Defendant Angelo when counselor Bennett was his staff
representative.

Paragraphs 31 through 33, which Milhouse did not
respond to or deny, reveal that Defendant Angelo does
not recall the specific referral hearing which was held
by way of videoconference; he does not recall if he was
present for the videoconference; and he was not the
hearing administrator and he did not make any decision
regarding Milhouse's access to a staff representative,
witnesses or his ability to present documentary
evidence. (Doc. 35, at 6.)

Paragraph 34 states that at some point before
the SMU hearing Milhouse gave Defendant Angelo a written
document regarding his SMU referral hearing.  Milhouse
in responding to this paragraph merely states the
document he gave Defendant Angelo listed the documents

he needed his staff representative to compile. (Doc. 45, at 5.)

Milhouse did not respond to or deny paragraph 35 which states that Defendant Angelo was not Milhouse's staff representative and Defendant Angelo provided the document Milhouse gave him to the Hearing Administrator who attached it to his report. (Doc. 35, at 6.)

The evidentiary materials submitted by Defendants' reveal that the referral hearing occurred on April 17, 2014, before Hearing Administrator Thomas McGee. (Doc. 35-1, at 7-8, 21-23.)  Defendant McGee in an unsworn declaration under penalty perjury indicates that he conducts both disciplinary hearings as well as SMU referral hearings and that he conducted Milhouse's SMU referral hearing. (Id. at 7-8.)  After the hearing Defendant McGee prepared a document entitled "Hearing Administrator's Report on Referral for Designation to a Special Management Unit" which reveals that Milhouse's staff representative was "C. Bennett, Correctional Counselor." (Id. at 22.) The report further reveals that

Milhouse appeared at the hearing by way of video-
conference and that he made a statement which was
summarized by Defendant McGee as follows:

> I have only had 3 incident reports at Hazelton.
> I have Psychological issues and I have been
> prescribed psychotropic medication that has
> caused me to act out.  I have told the
> psychology staff and medical staff about the
> side effects that these medications and
> they have done nothing to help me.  I was put
> in SHU after I had been assaulted by other
> inmates who assaulted me because staff
> started the rumor that I was a snitch.  This
> has put my life in danger unnecessarily.

(Id. at 21.)  Defendant McGee in the report further
states that Milhouse presented documentary evidence
which Defendant McGee attached to the report. (Id. at
22, 26.)[13]  Defendant McGee then found that Milhouse met
the criteria for designation to a SMU because he "has a

---

13. The so-called documentary evidence is merely
Milhouse's request for documentary evidence which as
previously stated was provided to Defendant McGee by
Defendant Angelo.  In the hearing report, Defendant
McGee did not address the appropriateness of Milhouse's
document requests. Because this court has determined
that it lacks personal jurisdiction over Defendant
McGee, whether or not McGee accorded Milhouse an
opportunity to present documentary evidence is not a
matter for this court to address.

history of serious and disruptive disciplinary

infractions" and he "otherwise participated in or was

associated with activity such that greater management of

[Milhouse's] interaction with other persons is necessary

to ensure the safety, security, or orderly operation of

Bureau facilities, or protections of the public."  (Id.

at 22.) The explanation given by Defendant McGee for the

referral was Milhouse's criminal history and history of

disciplinary infractions, which the court previously set

forth in detail and will not repeat. (Id. at 23.)

A Bivens action provides a remedy against

federal officials who violate certain constitutional

rights.  Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009).

The elements necessary to establish such a claim will

depend on the provision of the Constitution which is

alleged to have been violated. Id. at 676.  A person

seeking to recover damages under "Bivens" must satisfy

three requirements; he must: (1) assert that a

constitutionally protected right has been violated; (2)

state a cause of action sufficient to invoke the general

federal question jurisdiction of the district court; and (3) demonstrate why money damages are the appropriate form of relief.  See Muhammad v. Carlson, 739 F.2d 122, 123-4 (3d Cir. 1984).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether the plaintiff has sufficiently presented evidence of the personal involvement of the defendant in the acts which he or she claims violated his rights. Liability may not be imposed under Bivens on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989)(citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7.

41

In this case, it appears that Milhouse is alleging that Defendant Angelo denied him his right to due process.  He contends that Defendant Angelo denied him a requested staff representative, witnesses and documentary evidence.  However, a basic principle is that liability is premised on personal involvement in the alleged wrongful conduct. Id.  The summary judgment record reveals that Defendant Angelo's only involvement was apparently taking certain documents to Milhouse as well as taking one document which Milhouse gave him to Defendant McGee. Defendant Angelo was not Milhouse's staff representative and there is no evidence that it was his responsibility to obtain documentary evidence on behalf of Milhouse.  In fact the record reveals that Milhouse's staff representative was Counselor Bennett and Milhouse did not name him as a Defendant in this action. Defendant Angelo had no personal involvement or decision making authority in Milhouse's most recent SMU designation and no jury could reasonably conclude based on the summary judgment record that Defendant Angelo

violated any of Milhouse's constitutional rights. Because there are no triable issues of material fact, we will enter judgment in favor of Defendant Angelo and against Milhouse.

## C.   Personal Involvement of Warden Ebbert.

With respect to Defendant Ebbert, Milhouse did not respond to or deny paragraphs 36 through 47 of the statement of material facts. (Doc. 35, at 6-8.) Those paragraphs reveal that Defendant Ebbert is currently Warden at USP-Lewisburg; he is responsible for the overall orderly running of USP-Lewisburg; he is not involved in the day to day cell assignments of each inmate and he does not "force prisoners to have cellmates" or place them in restraints for refusing cellmates; he is aware that his staff considers many factors to try to match compatible cellmates; he has never been personally involved in writing a disciplinary incident report on Milhouse; he is neither a Disciplinary Hearing Officer, nor is he personally involved in the disciplinary process of sanctioning

43

inmates for disciplinary matters; Milhouse's most recent
SMU referral was generated by staff at USP-Hazelton and
routed and approved through officials of the Bureau of
Prisons' Mid-Atlantic Regional Office and Central
Office; Defendant Ebbert had no involvement in
Milhouse's SMU referral or approval; Milhouse was
transferred from USP-Hazelton to USP-Lewisburg's SMU on
April 14, 2014; Defendant Ebbert did not become Warden
at USP-Lewisburg until more than 5 months later, on
September 21, 2014; and Defendant Ebbert is not a mental
health care professional. (Id.)

        Paragraph 48 states that Defendant Ebbert relies
on the advice of trained mental health providers on his
staff regarding the treatment and appropriate care of
inmates.  (Id. at 8.)  Milhouse responded to this
paragraph by merely saying that the advice was
inaccurate and fabricated. (Doc. 45, at 5.)

        Milhouse did not respond to or deny paragraph 49
which states that Defendant Ebbert has never been
informed by the mental health care professionals on his

staff that Milhouse was not appropriate for the SMU
program because of a mental health issue. (Doc. 35, at
8.)

Paragraphs 50 through 55 of the statement of
material facts reveal that inmates assigned to the SMU
have the opportunity for frequent interaction with
mental health care providers (¶ 50); Milhouse is
currently classified as a Mental Health Care Level 1
inmate (¶ 51); a Mental Health Care level 1 designation
represents the lowest level of mental health care need
and inmates with this designation are appropriate for
the Special Management Unit Program (¶52); a review of
Milhouse's psychology records indicates he was seen most
recently on January 27, 2016, as a routine SMU Review (¶
53); after that review psychology staff stated that
Milhouse's present status, behavior and emotional
expressions do not suggest significant mental health
problems (¶ 54); and psychology staff stated that
Milhouse will continue to be seen during routine rounds,
and as needed (¶ 55).

Milhouse responded only to paragraphs 50, 53, 54 and 55. With respect to paragraphs 50, 54 and 55 Milhouse merely indicated that the statements were fabricated or falsified without reference to any evidentiary materials.  As for paragraph 53, Milhouse stated that he was last seen by psychology on June 2, 2014. However, an unsworn declaration under penalty of perjury from Dr. J. Sage, a psychologist, reveals that Milhouse was seen by psychology on January 27, 2016. (Doc. 35-1, at 31. Furthermore, attached to that declaration is an exhibit entitled "Bureau of Prisons Psychology Services SMU Review" which confirms that Milhouse was interviewed on January 27, 2016.  That review states in pertinent part as follows:

> Inmate Milhouse has been designated for placement in the Special Management Unit. In accordance with Program Statement 5217.01, Special Management Units, a psychological review was conducted. Milhouse was offered the opportunity to speak with Psychology Services on this date. Other staff members and/or available records were consulted as necessary and appropriate.
>
> The findings of this review are:

MENTAL STATUS: Current mental status, emotional expression, and behavior do not suggest significant mental health problems.

ADJUSTMENT: Based on available information, current adjustment to Special Management Unit appears to be SATISFACTORY.
THREAT TO SELF: Precise prediction of self-injurious behavior is difficult and should be modified over time as individual circumstances change. Based on the inmate's history, existing conditions, and other information available at the time of the review, the current risk of self-harm is judged to be LOW.

THREAT TO OTHERS: Precise prediction of dangerousness is difficult and should be modified over time as individual circumstances change. Based on the inmate's history, existing conditions, and other information available at the time of the review, the current potential for harm to others is judge to be MODERATE.

Significant mental health concerns were not evident in this review.  He will continue to be seen during routine rounds and as needed.

(Id. at 32.)

It is not at all clear what constitutional or statutory claims Milhouse is presenting.  He appears to suggest that Warden Ebbert is liable merely because Warden Ebbert is "aware" that he is not an appropriate candidate for the SMU because of a serious mental

disorder.  The summary judgment record unequivocally
rebuts the claim that Warden Ebbert was aware that
Milhouse was not appropriately designated to the SMU. In
fact the record, which includes undisputed statements of
fact, indicates the opposite.  Milhouse is a Mental
Health Care Level 1 inmate and inmates with that
designation are appropriate for the SMU program.  Warden
Ebbert had no personal involvement in the process which
resulted in Milhouse's designation to the SMU.  The
record reveals that Milhouse was transferred to the SMU
at USP-Lewisburg several months before Warden Ebbert
assumed his duties at USP-Lewisburg.  Furthermore,
Warden Ebbert, as a non-medical prison official
appropriately relied on the psychologists at USP-
Lewisburg. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.
2004)("If a prisoner is under the care of medical
experts . . . a non-medical prison official will
generally be justified in believing that the prisoner is
in capable hands.").

Milhouse further contends that Warden Ebbert "forces prisoners to have cellmates" and that he places them in restraints for refusing cellmates. He also complains that he has been "held accountable for his cellmate's actions" and as a result has lost privileges.

Similar to the analysis of the claims leveled against Defendant Angelo, the court again must assess whether Milhouse has sufficiently presented evidence of the personal involvement of Warden Ebbert in the acts which Milhouse claims violated his or her rights. Liability may not be imposed based on the traditional standards of <u>respondeat</u> <u>superior</u>. The court discerns no evidence in the summary judgment record from which a jury could reasonably conclude that Warden Ebbert was personally involved in the violation of Milhouse's federal constitutional rights. Because there are no triable issues of material fact, we will enter judgment

in favor of Defendant Ebbert and against Milhouse.

An appropriate order will be entered.


                        s/Sylvia H. Rambo
                        SYLVIA H. RAMBO
                        United States District Judge


Dated: June 8, 2016